We move to the final case this morning, Hodkiewicz versus Buesgen. Mr. Hennig, I apologize. I was listening to the earlier argument. I made the mistake of forgetting that it was it was delayed. I apologize, your honor. All right, you may proceed. Thank you, your honor. May it please the court. May it please the court. My name is Robert Hennig and I represent Eric Hodkiewicz on this appeal. This is a habeas appeal from a state court conviction. The issue raised is ineffectiveness of counsel for failing to object to hearsay evidence that was presented by the state in an attempt to bolster the credibility of the complainant and also failure to object or rebut evidence that was used by the state that was false and they should have known it was false if they didn't in an attempt to both bolster the complainant and undermine the defendant's testimony about the track phone activation was incorrect. The record, I believe that the state and the circuit court admitted it was incorrect. The circuit court admitted it was incorrect. The court of appeals admitted it was incorrect and the district court below indicated it was incorrect. What I think the state courts had problems with is the difference between a false statement and a lie. They seem to believe that Hensel could have believed that that Hodkiewicz had made some kind of an admission even though he didn't. You're talking now then about the the so-called better off underground point, correct? Exactly, your honor. Drovner was asking and I had a similar question about the ability to activate the track phone. Right, it's the track phone. Oh, I apologize, yes. Regarding the track phone, there was no evidence either way whether or not Mr. Hensel's testimony was accurate or not. People find that the testimony prejudiced the petitioner without showing that it was actually incorrect and I assume he had a chance to prove that Hensel was wrong at the post-trial hearings. That was a question of hearsay or confrontation. That was not an issue that we raised as a due process claim that he relied on evidence that he should have known was false. That was just a straightforward hearsay or right to confrontation because he had relied on an out-of-court statement by some unidentified expert at track phone, according to him. Mr. Hanek, what concerns me about all the reliance on the failure to raise hearsay objections is that at least in my experience in trials, a lot of hearsay objections that could be made are not made simply because it would be so easy to fix it or it's not that important. I can imagine a timely objection to Hensel's testimony about this activation and the prosecution says, okay, we'll bring in somebody from track phone to explain this to us. Unless it was incorrect and prejudicially so, I don't know how we could conclude that that amounted to ineffective assistance. Well, I believe that how you can identify it as ineffective assistance is number one, the attorney at trial or the attorney in the post-conviction motion did not indicate that the reason he didn't object was the one that the court is identifying. He simply overlooked the objection. Second, the people who would have had the access to prove either the accuracy or the inaccuracy of the hearsay statements were the state and the state had an opportunity to prove that accuracy at the post-conviction motion hearing and they chose not to. Putting it on us to say that some unidentified- I want you to prove prejudice, right? Yes. And prejudice is, this is hearsay, it is inadmissible. So what impact did that have on the trial? And the impact that it had on the what that went to show is that number one, somebody activated the phone and it was not Mr. Hodkowitz. So that gives us already somebody else who had a potential motive, acted on a motive to attack the complainant in this case. Number two, it shows that at least 17 of the track phone calls were made when Mr. Hodkowitz was in jail and could not have made those calls. So once again, we have somebody else who has a motive and is willing to act on the motive who isn't Hodkowitz, who- Counsel, how do we know he couldn't have made those phone calls? Well, we know that he was in jail and- That doesn't mean he couldn't have made them. Well, it means that certainly that a reasonable jury reasonably could reach that conclusion. We're not talking about a situation in which the defense must prove absolutely 100% that the defendant is innocent. Remember under Strickland, it's only a reasonable probability of a different result. Here, what we had at trial is that the evidence suggested that he certainly could have and that Hensel's testimony about the special privileges was that in fact, they had official information that he had access to phones and was using access to phones. And what we would have had without that is a jury speculating that perhaps somehow, some way he could have gotten access to phones. We don't know how, but in other words, just failing to follow the jury's or the jury instructions that you are to rely on the evidence in the case and not speculation. Now, the with regard to the special privileges that also directly undermined Hodkowitz's own testimony and therefore the credibility of all of his testimony by saying that here we have this evidence that directly contradicts Hodkowitz's testimony that he did not have access, that he did not activate the phone. Same thing with the underground testimony that was false. Hodkowitz testified he never made that statement. Hensel came in and falsely claimed that he did make that statement. The jury was left to decide whether or not or what impact that would have on Hodkowitz's credibility and his denials of all of these things. Mr. Hanek, did the jury see the defendant's recorded statement that they were talking about or did they see portions of it? No. The only evidence they had on that was his denial and Hensel's testimony claiming that he had made the statement admitting that he had made the statement about being better off with her underground. Did the defendant have the opportunity to put that statement in front of to impeach Hensel? He would have and that's one of our ineffectiveness claims that the defense attorney did not rebut Hensel's claims with the evidence showing they were false. Could a district, could a trial lawyer conclude that this is kind of collateral and that the difference between what Hensel said he said and what he actually said might not really impress a jury that much? It is possible but the trial attorney in this case specifically rejected that idea, rejected that out. He simply did not consider using that evidence to rebut Mr. Hensel. Basically what this comes down to is the complaining witness testified that she identified Hodkowitz in three areas. One was the shovel incident, one was the track phone calls, one was the July incident where she supposedly saw him in the mirror out of the corner of her eye while she was fuzzy on painkillers. There is every reason why the jury could reject those identifications and instead accept Hodkowitz's corroborated testimony that he was not involved in those things. Under those circumstances the issues in this case that we raised that go to the relative credibility of the two witnesses certainly could have had an impact on the jury and I see that my time is gone and I thank you the court. Thank you. Thank you counsel. Mr. O'Brien. May it please the court. As required by Strickland v Washington both the state trial court after three exhaustive post-conviction evidentiary hearings and the Wisconsin court of appeals reviewing the trial record, the complete trial record, determined they assessed counsel's performance, the many challenges to counsel's performance here for objective reasonableness and in those few instances where counsel's performance was not whether those instances of deficient performances created a reasonable probability of a different outcome had they not occurred. In reviewing in both those courts reasonably determined that counsel performed reasonably or in those cases where counsel did not that there is no reasonable probability of a different outcome. The district court as required by cases such as Harrington v court reasonably assessed the court of appeals decision for objective reasonableness in assessing counsel's performance and its probable impact on the outcome and I suggest that it's difficult to find a more thorough district court decision than the one we have here where Judge Joseph painstakingly went through the facts through the first 10 pages of the decision and painstakingly in the pages 24 through 29 assess the question of prejudice both individually and cumulatively and I think it's only reasonable to conclude or at least in the words of Harrington v. Ritger a fair-minded jurist could agree that it's reasonable to conclude that this that all of these lower courts got it right that the trial judge with his painstaking post-conviction review that ended with a 30-page decision got it right that the Wisconsin court of appeals reviewing that decision reviewing that record got it right and the district court in applying the AEDPA got it right when it said that that decision a fair-minded jurist could agree was also reasonable. I want to make one point here without plunging too much into the facts I want to make a point on the track phone issue because it seemed to be of concern to the court. I would refer this court to the October 27, 2015 post-conviction hearing. It's docket 10-9 from the district court record and pages 99 to 100 of docket 10-9. On this question of whether the information about the track phone was correct and whether someone could have been brought in from track phone yes defense counsel testified that he did not recall you know he didn't recall why he didn't object and he didn't he had no strategic reason but the prosecutor and his argument to the court pointed out that pre-trial he and defense counsel were exploring ways to streamline the trial and according to the prosecutor now he was not under oath but I but he was speaking as an officer of the court the prosecutor told the court that we were prepared to bring in someone from track phone at a quite an expense but we both decided defense counsel agreed that the information was correct and we both decided not to do it so the trial judge in his decision and post-conviction decision didn't find one way or the other on that but the judge said uh you know it's possible or it's reasonable for a defense attorney to want to streamline the trial and not make the the state not force the state have to bring someone in and prolong this already very long trial protracted trial and therefore he let that hearsay go where reasonably competent defense attorney could let that hearsay go and as the prosecutor pointed out he didn't accuse counsel of of lying under oath he said he probably forgot it was so long ago so I just want to bring that to the court's attention but again I for this court to rule in Mr. Hodkowitz's favor you're going to have to conclude that every court up to this point got it wrong the trial judge was unreasonable the Wisconsin court of appeals was unreasonable and the district court was unreasonable for holding that they were reasonable and again I really think that the district court got it right after just an exhaustive analysis of all of these many fact-bound issues that were presented. Brian could I ask you about the question I think this was a couple of incidents in August of 2012 and the debate was about whether the complaining witness was at work or was called on her work phone if I recall correctly the state court reversed a couple of convictions based on the reliance on hearsay on that point that's correct yeah and my question is why didn't that the the effect of of those errors in the reversal carry over to other charges particularly as they related to uh Hensel's credibility well because it I when I and I think the court stood it and now analyze the possible impact but I think I think the state court got it correct that all right that obviously affected those two charges to which those phone calls related but it's not clear that well and and also that um clearly the now those calls were in I believe August of 2012 if I recall or that call and that that the two disorderly conduct the disorderly conduct charge that related to it but we have physical assault that occurred in July of 2013 and another physical assault assault that occurred in May of several two physical assaults occurred May of 2010 so we're talking about things that are very remote in time and things that were independently corroborated by might have had the fact of whether she got that call on a work phone or on a cell phone and and to think that that how that I mean I think Mr. Hodkins wants everyone to believe that that Hensel lied about whether she got that call on the work phone or on the cell phone where it's very possible that it could be a mistake that it'd be a bad recollection but regardless the impact on especially counts four through nine I think is just minuscule and um that uh and and that the state court directly dealt with it correctly it said all right yes this was prejudicial with regard to those two counts to which his testimony directly related with regard to the others and the stalking count as well where there were so many other instances proven of stalking that even when you take these two rather minor incidents out it's reasonable to hold that there's no reasonable probability of different outcome had that testimony been correct. I'll ask you about one other thing and that that is the what I'm calling the underground testimony by Hensel about what Hodkowitz had told him. It's pretty unusual in at least in the to have the state courts and the district court saying that police officer gave false testimony and there being no relief from it. Well I you know I again we're in a we're in a Strickland analysis we're not in a straight due process analysis because that was forfeited so we're in a Strickland analysis so even assuming that those courts correctly found that the testimony was false and and I or incorrect you know false implies intentional wrongdoing and I think that one could interpret it as a gradual evolution of his viewpoint but but the focus then is on prejudice was there a proof being that the statement was made in his presence if he didn't say it he was there when co-workers were joking about it and and certainly that so again the focus is all right do we does it make is it reasonably probable that all of these counts will change that the outcome will change if the testimony is that well he didn't say it but he was there when his co-workers were and he didn't tell him to stop and so again you know with the focus being on Strickland I think all the courts got it right at least with respect to the question of prejudice. Thank you Mr. Klein. Thank you. Mr. Hennick I think you used all your time have you not? Still muted. So sorry if I could just have one minute please. All right. Thank you. Sorry you just muted yourself again there we go. Yes I in any event the work phone issue that and specifically impacts the July of 2013 charges because and this is the reason the phone call concerned flowers that had been left at the new secret apartment that the complaining witness had it was used the fact of the phone call was used to indicate that even though the complainant had not told Hodkowitz or anybody other than her family and her father of her first son that she lived there it was used to indicate that Hodkowitz knew where she lived and therefore would be able to find her and attack her on the 13th on July of 2013. Without that information there was no evidence that he knew where she lived and knew how to find her. Thank you. Thanks to both counsel and the case will be taken under advisement and the court will be in recess.